UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARGARET SUE NOWELL, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-10-205 |
| | § | |
| COASTAL BEND SURGERY CENTER, | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are a variety of motions. The specific motions and the Court's rulings are set out below.

## I. Procedural Background

Plaintiff Margaret Sue Nowell ("Plaintiff") filed suit in the County Court at Law No. 2 in Corpus Christi, Texas on May 30, 2010, and shortly thereafter Defendant Coastal Bend Surgery Center ("Defendant") removed the case to this Court. (Dkt. No. 1.) Plaintiff's First Amended Complaint brings causes of action against Defendant for: (1) gender discrimination under Title VII of the 1964 Civil Rights Act ("Title VII"); (2) age discrimination under the Age Discrimination in Employment Act (ADEA) of 1967; and (3) retaliation. (Dkt. No. 9 ¶¶ 22—25.)

Defendant filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment on July 28, 2010. (Dkt. No. 8.) In response, Plaintiff filed her First Amended Complaint, which re-plead at least some of the claims underlying Defendant's original motion to dismiss but made no reference to nor adopted any portion of Plaintiff's Original Petition. (Dkt. No. 9.) Because an amended complaint supersedes a prior complaint and renders it of no legal effect unless the amended complaint specifically refers to or adopts the earlier pleading, *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th

1

Cir. 1985)), Defendant's Motion to Dismiss, or Alternatively, Motion for Summary Judgment
was rendered moot when Plaintiff filed her First Amended Original Complaint.

As a result, Defendant filed its First Amended Motion to Dismiss or, Alternatively,
Motion for Summary Judgment, to which a number of exhibits were attached. (Dkt. No. 14.)
Plaintiff responded, asking the Court to disregard Defendant's exhibits and to deny Defendant's
motion to dismiss. (Dkt. No. 15.) On October 16, 2010, the Court ordered that, in the interest of
efficiency, the entire motion would be treated as a motion for summary judgment.[1] (Dkt. No.
20.) The Court also granted Plaintiff an additional 21 days to prepare a response to Defendant's
Motion for Summary Judgment. (*Id.*) Roughly two months later, Plaintiff filed her Second
Amended Original Complaint and her Response to Defendant's Motion for Summary Judgment,
which included a section entitled "Revised Motion for Continuance in Compliance with FRCP
56(f)." (Dkt. Nos. 21 & 22.) Defendant replied to Plaintiff's motion for a continuance and also
moved to strike Plaintiff's Second Amended Original Complaint. (Dkt. Nos. 23 & 24.) The Court
will consider the Parties' various motions below.

**II. Factual Background**

Defendant hired Plaintiff as its Director of Nursing in 2004. In February 2009, Plaintiff
took a leave of absence under the Family and Medical Leave Act (FMLA) to care for her
husband, who was undergoing chemotherapy treatments for cancer. (Dkt. No. 14, Ex. 1.) On
April 21, 2009, Defendant's Director of Human Resources, Nicole Morales, sent Plaintiff a letter
informing Plaintiff that her FMLA leave would expire on Friday, May 8, 2009 and that she was
expected to return to work on Monday, May 11, 2009. (*Id.*, Ex. 2.) The letter explained that if

---

1. *See Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979) (When a "trial court consider[s] matters
outside the pleadings, [a] motion to dismiss must be considered as a motion for summary judgment . . . ."); *Stewart
v. Murphy*, 174 F.3d 530 (5th Cir. 1999) (affirming summary judgment where, "in the interest of efficiency, the
magistrate judge considered the evidence developed through discovery and treated the [Rule 12(b)(6)] motion as one
of summary judgment, rather than striking the complaint and requiring the Appellants to refile").

Plaintiff was unable to return to work on May 11, then Defendant would have no choice but to terminate Plaintiff's employment. (*Id.*) However, Ms. Morales invited Plaintiff to raise any "additional circumstances that may be relevant or that [Plaintiff] may wish to bring to [Defendant's] attention." (*Id.*) On April 30, 2009, Ms. Morales informed Plaintiff by e-mail that if she returned to work on May 11, she would be reinstated to her previous position as Director of Nursing. (Dkt. No. 14, Ex. 3.) Ms. Morales further wrote, "In the event you can not return to work on May 11[,] 2009 then just let us know when you can return to work and we will sit down and figure out what positions are available." (*Id.*) Rather than returning to work or discussing her options with Ms. Morales, Plaintiff emailed Ms. Morales her notice of resignation on May 8, 2009, effective immediately. (Dkt. No. 14, Ex. 4.)

Roughly two months later, on July 1, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge") (Dkt. No. 14, Ex. 5). In her EEOC Charge, Plaintiff alleged that Defendant forced her to take leave under the FMLA and then discharged her from employment. (*Id.* at 1.) Plaintiff further alleged that Defendant discriminated against her on the basis of her gender (female) and age (over 40), and that she was replaced by a younger male. Finally, Plaintiff claimed that Defendant retaliated against her because she took time off work to care for her husband. (*Id.* at 2.)

## III. Defendant's Motion to Strike Plaintiff's Second Amended Original Complaint

### A. Legal Standard

Under Federal Rule of Civil Procedure 15(a), if more than 21 days have passed since service of the complaint or a responsive pleading thereto, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). The Rules set forth a liberal policy in favor of permitting amendment of pleadings, and district courts are not to deny such amendments absent "a substantial reason" to do so. *Dussouy v. Gulf Coast*

*Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981); *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x. 205, 208—09 (5th Cir. 2006) (unpublished)). Accordingly, while leave to amend "is by no means automatic," *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted), courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a).

When determining whether to grant a motion for leave to amend, courts in this circuit may consider several factors, including undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 321 (5th Cir. 1991). The definition of futility adopted by the Fifth Circuit includes circumstances in which a proposed amendment to assert a claim would fail to state a claim upon which relief could be granted under Rule 12(b)(6). *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872—73 (5th Cir. 2000).

**B. Analysis**

In its Motion to Strike, Defendant states that it did not give Plaintiff consent to file her Second Amended Original Complaint. Plaintiff also did not seek leave to amend, but simply filed yet another complaint without the Court's permission, in violation of Rule 15(a)(2). Even if Plaintiff had sought leave to amend, however, the Court finds that the factors set forth by the Fifth Circuit favor denying amendment. *See Jones*, 427 F.3d at 994; *Avatar Exploration*, 933 F.2d at 321.

First, Plaintiff has repeatedly failed to cure deficiencies in her complaint—for example, she has repeatedly failed to allege that she engaged in a protected activity as an element of her retaliation claim. *See infra*, Part IV.B.2. Furthermore, because the Court has determined that Defendant should be granted summary judgment on all of Plaintiff's claims, and Plaintiff has not

alleged any new causes of action or cured deficiencies in her amended complaint, the Court finds

that amendment would be futile. Finally, and most importantly, allowing Plaintiff to amend her

complaint at this stage would unduly prejudice Defendant, which was already forced to file its

First Amended Motion to Dismiss or, Alternatively, Motion for Summary Judgment after

Plaintiff filed her First Amended Original Complaint in July 2010 (also without Defendant's

consent or the Court's permission). Because Defendant's presently pending motion for summary

judgment addresses the claims in Plaintiff's First Amended Original Complaint, if the Court

were to allow Plaintiff to file yet another complaint, the Court would then be required to deny

Defendant's amended motion as moot, thus forcing Defendant to move for summary judgment a

third time. *See supra* at 2. To the extent Plaintiff is attempting to use amendment as a stall tactic

to allow more time to conduct the discovery sought in her Rule 56(f) motion, such dilatory

motive further weighs against amendment.

Accordingly, the Court is of the opinion that Plaintiff's Second Amended Original

Complaint should be stricken.

**IV. Plaintiff's Revised Motion for Continuance in Compliance with FRCP 56(f)**

    **A. Legal Standard**

Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary

judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to

justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained . .

. or other discovery to be undertaken." FED. R. CIV. P. 56(f). Rule 56(f) discovery motions are

"'broadly favored and should be liberally granted' because the rule is designed to 'safeguard

non-moving parties from summary judgment motions that they cannot adequately oppose.'"

*Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*,

468 F.3d 868, 871 (5th Cir. 2006)). However, the party seeking a continuance "'may not simply

rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Id.* (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). Rather, the party "must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

The party seeking a continuance under Rule 56(f) must explain why the party is currently unable to present evidence creating a genuine issue of material fact and how a continuance would enable the party to present such evidence. *Solo Serve Corp. v. Westowne Associates*, 929 F.2d 160, 167 n.25 (5th Cir. 1991) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990)). Specifically, the party should "present his affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describe his attempts to obtain those facts." *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1031 (5th Cir. 1983) (quoting 6 J. MOORE, FEDERAL PRACTICE § 56.24 at 2876 (2d ed. 1974)). The affidavit should also set forth "what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures." *Paul Kadair*, 694 F.2d at 1031.

"A lack of diligence in obtaining the needed information to oppose a motion for summary judgment should not supply the basis for delay simply by relying on Rule 56(f)," and a court may deny a request for a continuance if discovery was dilatorily sought. *Id.* What is "dilatory" depends upon the facts of a particular case. *Id.* Factors deemed relevant under Fifth Circuit precedent include:

> 1) the length of the pendency of the case prior to the Rule 56(f) request; 2) whether and when plaintiff could have anticipated its need for the requested discovery; 3) the previous efforts, if any, made by plaintiff to obtain the needed

information either through Rule discovery or otherwise; 4) the degree and nature of discovery already undertaken; 5) any limitations placed upon discovery previously by the trial court; 6) any prior solicitations of or provisions for discovery by the trial court; 7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim be dismissed; and 8) whether the requested information was inaccessible to plaintiff, *e.g.* as when within defendant's exclusive control, or whether alternative, accessible sources existed but were foregone.

*Id.*

### B. Analysis

In an affidavit executed by Plaintiff's attorney and attached to Plaintiff's motion, counsel

for Plaintiff sets forth the following reasons a continuance is necessary:

Plaintiff requires documents, interoffice memoranda, corroborating evidence form [*sic*] witnesses and the testimony of Gene Hybner to further demonstrate and substantiate [Plaintiff's] contention that she was constructively terminated, retaliated against and subjected to hostile work environment in violation of Title VII of the Civil Rights and the ADEA.

Plaintiff needs additional time to investigate and obtain employer discovery regarding demotion, reduction in job responsibilities, reassignment of work responsibilities to lesser work, badgering, harassment and humiliation by the employer and written offers of early retirement to further substantial [*sic*] [Plaintiff's] claim of constructive termination.

Plaintiff would also like to prepare a substantive affidavit of [Plaintiff] after she can review documents provided by defendant. The above described discovery is necessar [*sic*] to prepare an adequate response to the pending motion for summary judgment. . . . Plaintiff cannot present facts necessary to adequately justify it's [*sic*] position without further discovery.

(Heil Aff., Dkt. No. 22, Ex. 1 at 1—2.)

The Court finds that Plaintiff has not "set forth a plausible basis for believing that

specified facts . . . probably exist and indicate[d] how the emergent facts, if adduced, will

influence the outcome of the pending summary judgment motion," as required under existing

Fifth Circuit law. *See Raby*, 600 F.3d at 561. Plaintiff has not alleged that the requested

information is inaccessible to her or is within Defendant's exclusive control. *See Paul Kadair*,

694 F.2d at 1031. Plaintiff has also failed to set forth a "reasonable time frame" for collecting such facts. *See Raby*, 600 F.3d at 561. Plaintiff "requests 100 days from January 1st, 2011 to obtain and object to discovery and to then facilitate the necessary depositions in this case . . . ." (Dkt. No. 22 at 2.) Such a request would set the discovery cutoff at April 11, 2011, almost one month beyond the discovery deadline set by the Court's Scheduling Order (Dkt. No. 19).

An analysis of the factors set forth in *Paul Kadair* further supports denial of Plaintiff's motion because discovery was dilatory sought. This case had been pending for more than six months before Plaintiff filed the present Rule 56(f) motion, even though Plaintiff could have anticipated her need for the requested discovery as early as July 2010, when Defendant first moved for summary judgment. Plaintiff has presented no evidence or argument that she has made any efforts thus far to depose Mr. Hybner or obtain the needed "employer discovery," either through Rule discovery or otherwise. In fact, Plaintiff has presented no evidence that she has undertaken *any* discovery in this case. Finally, even though the Court granted Plaintiff an additional 21 days to respond to Defendant's motion for summary judgment, Plaintiff ignored the deadline for nearly two months before finally moving for a continuance. It appears that "the only barrier to discovery was [Plaintiff's] lack of diligence." *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995) (affirming denial of Rule 56(f) continuance where summary judgment was rendered nine months after suit was filed and two months after motion was filed; "yet, during this entire time the [plaintiffs] made no attempt to conduct discovery."); *Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1189 (5th Cir. 1978) (affirming denial of continuance where nonmovant failed to initiate discovery even though action had been on file for six months).

Finally, and most importantly, Plaintiff has not explained why she is currently unable to present evidence creating a genuine issue of material fact or how a continuance would enable her

8

to present such evidence. *See Solo Serve Corp.*, 929 F.2d at 167; *Washington*, 901 F.2d at 1285.

Specifically, Plaintiff has not offered any explanation for her failure to proffer her own affidavit

at this time, except to state that she "would also like to prepare a substantive affidavit of

[Plaintiff] after she can review documents provided by defendant." (Dkt. No. 22, ex. 1 at 2.) Rule

56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge,"

and the Court is at a loss as to why Plaintiff is unable to give her version of the facts without first

reviewing any outside materials.

Accordingly, the Court is of the opinion that Plaintiff's Revised Motion for Continuance

in Compliance with FRCP 56(f) should be denied.

## V. Defendant's Motion for Summary Judgment

### A.  Legal Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher*

*Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-

movant would bear the burden of proof at trial . . . , the movant may merely point to the absence

of evidence and thereby shift to the non-movant the burden of demonstrating by competent

summary judgment proof that there is an issue of material fact warranting trial." *Transamerica*

*Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by

setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City*

*S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in

the light most favorable to the non-movant and draw all reasonable inferences in favor of the

non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### B.  Analysis

#### 1.  Gender and Age Discrimination

Title VII prohibits adverse employment action "because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits similar discriminatory treatment on the basis of age. 29 U.S.C. § 623(a)(1). The determination of whether certain facts amount to "adverse employment actions" depends on whether not those facts constitute "ultimate employment decisions." *Pryor v. Wolfe,* 196 Fed. Appx. 260, 262—63 (5th Cir. 2006) (per curiam); *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995) (per curiam). Ultimate employment decisions involve actions such as hiring, firing, granting leave, discharging,

promoting, and compensating. *Pryor*, 196 Fed. Appx. at 262; *Willis v. Coca Cola Enters. Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

The burden-shifting test announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Plaintiff's discrimination claims under both Title VII and the ADEA. Under the *McDonnell Douglas* approach, the allocation of the burden of production and the order for presentation of proof is as follows: (1) the plaintiff must first establish a *prima facie* case of discrimination; (2) if the plaintiff meets her burden, then the burden of production shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for its actions; and (3) if the defendant produces a legitimate reason, then the presumption of discrimination vanishes, and the plaintiff must demonstrate a genuine issue of material fact that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 142—43 (2000). The Fifth Circuit has held that a *prima facie* case is established when evidence of the following is presented: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for her position; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512—13 (5th Cir. 2001) (citations omitted).

Plaintiff's Complaint alleges that Defendant's ongoing pattern of gender and age discrimination "led Plaintiff to be limited on pay and advancement, and ultimately led to her being constructively terminated" by Defendant. (Dkt. No. 9 ¶¶ 15—16.) Plaintiff further "contends her termination was vioalative [sic] of the ADEA [and] Title VII." (*Id.* ¶ 19.) Defendant does not dispute that Plaintiff is a member of a protected class; however, Defendant

contends that Plaintiff's claims for gender and age discrimination must fail as a matter of law because Plaintiff has presented no competent summary judgment evidence[2] that she suffered adverse employment action under any of her three theories—actual termination, constructive termination, or failure to advance.

### a. Actual Termination

Contrary to Plaintiff's claims that she was "discharged from her position as Director of Nursing" (Dkt. No. 14, Ex. 5 at 1) and "was terminated on May 11th, 2009" (Dkt. No. 9 ¶ 19), the uncontroverted summary judgment evidence shows that Defendant did not terminate Plaintiff's employment. Instead, Defendant provided Plaintiff with numerous alternative employment opportunities in the event that she was unable to return to her position as Director of Nursing due to her husband's illness, and that rather than pursue or explore these alternatives, Plaintiff voluntarily resigned. (Dkt. No. 14, Exs. 2, 3 & 4.) When Ms. Morales notified Plaintiff that she would be expected to return from FMLA leave on May 11, 2009, Ms. Morales invited Plaintiff to raise any "additional circumstances that may be relevant" (*Id.*, Ex. 2), but Plaintiff did not raise any concerns. When Ms. Morales later told Plaintiff that if she was unable to return to work when her leave expired, "just let us know when you can return to work and we will sit down and figure out what positions are available" (*Id.*, Ex. 3), Plaintiff did not accept Ms. Morales' invitation, but instead responded with her letter of resignation. (*Id.*, Ex. 4.)

---

2. Plaintiff attached copies of her EEOC Charge, EEOC Intake Questionnaire, and a document entitled "Supporting Chronology of Facts and/or Documents" to her Response to Defendant's Motion for Summary Judgment (Dkt. No. 22). Because none of these documents were authenticated, this evidence is therefore inadmissible and will not be considered by the Court. Plaintiff also repeatedly cites her Second and Third Amended Complaints as evidence. Plaintiff has never filed a Third Amended Complaint in this case, and her Second Amended Complaint has been ordered stricken. Furthermore, even if these pleadings were before the Court, "where one party advances a properly supported motion for summary judgment, FED. R. CIV. P. 56(e) expressly prohibits the resisting party from resting merely on the allegations and denials of his pleading." *Securities and Exchange Comm'n v. Spence & Green Chemical Co.*, 612 F.2d 896, 900—01 (5th Cir. 1980).

In response to Defendant's motion, Plaintiff alleges for the first time that she was "coerced into signing any separation papers." (Dkt. No. 15 at 3.) Plaintiff has presented no competent evidence—not even her own affidavit—raising an issue of fact as to whether anyone coerced or forced her into resigning, and, as Defendant points out, Plaintiff did not sign "separation papers," but instead sent her resignation to Ms. Morales via email. Furthermore, even if Plaintiff had not voluntarily resigned, Defendant would have been within its rights to terminate Plaintiff's employment on May 11, 2009, as Plaintiff lost the right to be reinstated to her position as Director of Nursing when she was unable to return to work following the expiration of her 12 weeks of FMLA leave. *See* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition . . . , the employee has no right to restoration to another position under the FMLA."); s*ee also Oatman v. Fuji Photo Film USA, Inc.*, 54 Fed. Appx. 413, *2 (5th Cir. 2002) (unpublished); *cert. denied*, 538 U.S. 978 (2003).

### b.  Constructive Termination

A constructive discharge occurs when an employer "makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 771 (5th Cir. 2001); *see also Faruki v. Parsons,* 123 F.3d 315, 319 (5th Cir. 1997); *Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir. 1997). The Fifth Circuit has "identified six factors to aid our constructive discharge inquiry: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 480—81 (5th Cir. 2008) (quoting *Hunt*, 277 F.3d at  771—72).

Although Plaintiff's EEOC Charge and Complaint are unclear as to *why* she felt compelled to resign, the Court has identified two potential scenarios: (1) Defendant's CEO, Gene Hybner, allegedly made "derogatory remarks to [Plaintiff] regarding her age," "harassed [Plaintiff] and created a hostile working environment by making false accusations against her and yelling at her in front of other staff" (Dkt. No. 9 ¶¶ 13 & 16), and "provided cell phone benefits to all administrative personnell [*sic*] with the exception of Mrs. Nowell" (Dkt. No. 22 at 3); and (2) Defendant allegedly forced Plaintiff to unnecessarily take FMLA leave (Dkt. No. 14, Ex. 5 at 1).

To the extent Plaintiff claims that she was constructively terminated based on treatment by Mr. Hybner, Plaintiff has failed to present any competent evidence—not even her own affidavit—raising an issue of fact as to whether Mr. Hybner made any inappropriate remarks regarding Plaintiff's age or otherwise engaged in any "badgering, harassment, or humiliation . . . calculated to encourage [Plaintiff's] resignation" during the entire course of her employment with Defendant. *See Aryain*, 534 F.3d at 480—81. The Court further finds that Plaintiff's allegations regarding Mr. Hybner's refusal to provide her with cell phone benefits, even if true, do not rise to the level of "intolerable working conditions" that would compel a reasonable person to resign. *See Hunt*, 227 F.3d at 771. Thus, any claim for constructive discharge stemming from Mr. Hybner's alleged conduct must fail.

To the extent Plaintiff claims that she was constructively terminated by being forced to take FMLA leave, the uncontroverted summary judgment evidence shows that Plaintiff voluntarily submitted a request for Family/Medical Leave of Absence on February 19, 2009. (Dkt. No. 14, Ex. 1.) The request is signed by Plaintiff, and Plaintiff has presented no competent evidence—not even her own affidavit—to raise an issue of fact as to whether she completed this form against her will. Besides, even if Defendant had required Plaintiff to take leave under the

FMLA when she took time off work to care for her ailing husband, the law is clear that an employer may place an employee on FMLA leave, even involuntarily, if the reason for leave meets the FMLA's definition of "serious health conditions." *See Willis*, 445 F.3d at 417 ("As a threshold matter, it is not contrary to the FMLA for an employee to be placed on 'involuntary FMLA leave.'")

### c.  Failure to Advance or Promote

As noted *supra*, Plaintiff's EEOC Charge alleged that she was *terminated* on the basis of her gender and age. (Dkt. No. 9, Ex. 5.) For the first time, Plaintiff alleges in her First Amended Complaint that because of her gender and age, she was also "limited on pay" and "not given a reasonable opportunity for advancement." (Dkt. No. 9, ¶¶ 11 & 15.)

"[B]efore a plaintiff can commence a civil action under Title VII in federal court, she must file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996) (citing 42 U.S.C. § 2000e-5(e)(1)). Likewise, Plaintiff must also have exhausted her ADEA claim administratively before the EEOC. *Kretchmer v. Eveden, Inc.*, 374 Fed. Appx. 493, 495 (5th Cir. 2010). The scope of Plaintiff's discrimination claims in this lawsuit is therefore limited to the allegations made in the EEOC charge and the scope of the investigation that could reasonably be expected to grow out of the EEOC charge. *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577—78 (5th Cir. 1993) (stating that the charge of discrimination defines the scope of the claims the plaintiff may pursue in court, and a plaintiff is barred from pursuing any discrimination claim which was not raised in the EEOC charge); *see also Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981) ( "[A] rule of reason . . . permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge.").

The Court finds that Plaintiff's new-founded allegations that she was limited in pay and advancement do not "grow out of" her claim that she was terminated. Consequently, Plaintiff must independently exhaust her administrative remedies on her advancement claim before pursuing it in this Court. *See Fine*, 995 F.2d at 578; *Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

Because Plaintiff has failed to offer any competent summary judgment evidence that she suffered adverse employment action by Defendant, she cannot establish her *prima facia* case of discrimination, either based on gender or age. Defendant is therefore entitled to summary judgment as a matter of law on Plaintiff's claims for gender discrimination under Title VII and age discrimination under the ADEA.

### 2.  Retaliation

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). To establish her *prima facie* case of retaliation under Title VII, Plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse employment action.  *Aryain*, 534 F.3d at 484; *Roberson v. Alltel Information Services*, 373 F.3d 647, 655 (5th Cir. 2004); *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996). "If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If Defendant meets this burden of production, Plaintiff then bears the burden of proving that Defendant's reason is a pretext for the actual retaliatory reason. *See Aryain*, 534 F.3d at 484.

A plaintiff may be also entitled to recovery if her employer retaliates against her for exercising her FMLA rights. 29 U.S.C. §§ 2615, 2617. Discrimination claims brought pursuant to the FMLA are not significantly different from similar claims brought pursuant to Title VII or other anti-discrimination laws. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999). Therefore, in the absence of direct evidence, courts analyze FMLA retaliation claims, like Title VII claims, under the *McDonnel Douglas* approach described at length in Part III.A *supra*. *See Richardson v. Medtronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Plaintiff's Complaint does not identify *how* Defendant allegedly retaliated against her, nor does Plaintiff identify any protected activity in which she purportedly engaged. Instead, her Complaint merely states that: (1) "Defendant participated in retaliation to Plaintiff" (Dkt. No. 9 ¶ 16); (2) Plaintiff was "retaliated against by her employers" (*Id.* ¶ 19); (3) "[t]he unlawful retaliation was the cause of substantial damage to Plaintiff" (*Id.* ¶ 20); and (4) Defendant's conduct "constitutes a violation of the Equal Employment Opportunity Act's prohibitions . . . on retaliation for engaging in protected activity (*Id.* ¶ 22). Plaintiff's EEOC Charge, however, alleges, "I believe I was retaliated against because I took time off from work to care for my husband during chemotherapy treatments. Also, because I challenged my employer regarding limiting the time I could work." (Dkt. No. 9, Ex. 5 at 2.)

To the extent Plaintiff alleges that Defendant retaliated against her for willingly exercising her rights under the FMLA, such a claim directly contradicts Plaintiff's allegation in her EEOC Charge that "the CEO forced [her] to take FMLA leave" (Dkt. No. 14, Ex. 5 at 1). Moreover, as explained in detail in Part IV.B.1.a *supra*, the uncontroverted summary judgment evidence shows that Defendant kept Plaintiff's job open during the entire period of time Plaintiff

17

was entitled to leave under the FMLA and made every effort to facilitate her return to work, but

Plaintiff instead chose to resign.

The Court finds that Plaintiff has failed to establish a *prima facia* case of retaliation under

either Title VII or the FMLA. Defendant is therefore entitled to summary judgment as a matter

of law on Plaintiff's retaliation claim.

## VI. Conclusion

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Defendant's Motion to Dismiss, or Alternatively, Motion for Summary Judgment (Dkt. No. 8) is **DENIED** as moot;

2. Defendant's Motion to Strike Plaintiff's Second Amended Original Complaint (Dkt. No. 24) is **GRANTED**;

3. Plaintiff's Second Amended Original Complaint (Dkt. No. 21) is **STRICKEN**;

4. Plaintiff's Revised Motion for Continuance in Compliance with FRCP 56(f)  (Dkt. No. 22) is **DENIED**; and

5.  Defendant's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED**.

It is so **ORDERED**.

**SIGNED** this 2nd day of February, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE